FIELD *v.* BOARD OF WATER COMMISSIONERS OF CITY OF
MANISTEE.

1. Municipal Corporations—Charter Provisions—Powers of
Common Council—Supervision of Administrative Agencies.
An amendment to the charter of a municipality, authorizing
the appointment of a board of water commissioners, does not
create of said board an independent department of the city
government entirely outside of the control of the usual city
government, but is an administrative agency of the city,
subject to its general supervision and control, except as
otherwise provided; and a provision of the charter requiring
said board to submit an annual report to the council, to be
audited by the finance committee thereof, while it creates a
duty on the part of such board and council, does not restrict
the general powers inherent in the council to investigate the
performance of their duties by its officers and agents.

2. Same—Charter Provisions—Amendments.
An amendment to the charter of a municipal corporation is to
be construed as though it was a part of the original charter.

Certiorari to Manistee; Rose, J. Submitted March
16, 1909. (Calendar No. 23,272.) Decided March 30,
1909.

Mandamus by August Field, mayor, to compel the
board of water commissioners of the city of Manistee to
submit its books of account for audit, and to require said
books to be kept in the office of the city clerk. There
was an order granting the writ, and respondent brings
certiorari. Affirmed.

*P. T. Glassmire* (*Smurthwaite & Alway,* of counsel),
for relator.

*Fowler & Withey,* for respondent.

Blair, C. J. The city of Manistee is the owner of its
waterworks system, and prior to the amendment of its

charter in 1903 operated the same under the provisions of an ordinance. In 1903 the legislature enacted Act No. 422, Local Acts 1903, amending section 3 of chapter 5 of the charter, and adding two chapters thereto, to stand as chapters 33 and 34. Section 3 of chapter 5, as amended, reads as follows:

"SEC. 3. The council shall, on the nomination of the mayor, elect and appoint, by a majority vote of all the aldermen elected, a city attorney, a street commissioner, a city surveyor, a pound master, a harbor master, one assessor, one police and fire commissioner, one water commissioner, and such other officers as the council may from time to time deem necessary, to carry into effect the powers granted by this act. The mayor shall submit to the council his nominations to the above-named offices at the meeting of the council on the third Tuesday in April in each year."

The added chapter 33 provided for "the board of water commissioners." Section 1 provided that the board appointed under the ordinance should continue till their terms expired "and as such shall be deemed officers of the city." Section 2 provides for election of members by the common council on nomination of the mayor. Section 5 requires each commissioner to file a bond "for the faithful discharge of his duties, which bond shall be approved by the mayor and chairman of the finance committee of the council." Section 8 is as follows:

"SEC. 8. Said board shall have the entire management, control and operation of the waterworks of the city, and it shall be the duty of the board to control, operate and manage said waterworks, and, except as hereinafter provided, to make and superintend all necessary repairs, extensions, enlargements or improvements thereof; to employ all necessary labor to operate said waterworks; to audit and pay all expenses of operating the same, and of the repairs and improvements thereof; and to perform all such other services for the careful and economical operation of said waterworks. Said board shall also have such other and further powers not herein granted, as are given to water boards by the general laws of this State,

and as are not inconsistent with the powers and rights herein granted."

Section 9 provides the number of regular employés, and that "the number of regular employés and their salaries shall not be increased at any time without the authority of the council." Section 11 provides that moneys collected shall be paid over to the city treasurer to be kept in a separate fund, and not to be transferred to any other fund except for the payment of waterworks bonds and the interest thereon. Section 13 authorizes the council to raise money by special tax to provide for deficiency in fund to pay bonds. Sections 14, 15, 16, 17, read as follows:

"SEC. 14. When, in the opinion of the board, it becomes necessary to increase the capacity of the waterworks, or to construct any new works, or to increase the service of said waterworks, involving a total expenditure of more than five thousand dollars in any one year, the board shall, before incurring any expense or liability therefor, prepare plans and specifications of the proposed improvement, and estimates of the cost thereof, and report the same to the council for its approval of, and consent to, the proposed expenditure.

"SEC. 15. The said board shall, on or before March fifteenth in each year, make and file with the city clerk a full and complete report for the year ending on the last day of February, showing the income received from said waterworks and the sources thereof; the expenses of operating the waterworks; the amount expended for extensions, improvements and repairs, and in the payment of bonds and interest; the amount of money on hand, and the purpose for which held. The finance committee of the council, or other committee appointed by the council for that purpose, shall, upon the filing of said report, audit the books of the board and compare the report with said books, and report their findings to the council, at the first meeting thereof, after said date; and such report shall be published as part of the proceedings at said meeting of the council.

"SEC. 16. In case of any special work being required from said board by the council, such as the lowering of water mains to conform to a change of street grade, or

moving any fire hydrant from one place to another, the cost of such special work shall be paid to the board by the council. Fire hydrants shall be placed wherever ordered by the council; and whenever new fire hydrants are ordered to be installed, requiring the extension of one or more water mains, the cost of such extension and hydrants shall, in the first instance, be paid to the board by the council, but as soon as sufficient revenue is derived from private consumers and hydrant rentals from such extensions, the cost of the same shall be repaid to the council by the board.

"17. The council shall have authority to enact such ordinances as they may deem necessary, for the protection of the waterworks, and any and all parts thereof, and against the violation of such ordinances may impose therein such fines, penalties and forfeitures as are prescribed in chapter nine of this act."

The charter of Manistee in question was enacted in 1882. Act No. 48, Local Acts 1882, chap. 7, § 3, provides that the mayor "shall have authority at all times to examine and inspect the books, records and papers of any agent, employé, or officer of the corporation," etc. Section 8 provides that:

"The city clerk shall exercise a general supervision over all officers charged in any manner with the receipt, collection and disbursement of the city revenues and all the property and assets of the city; he shall have charge of all books, vouchers and documents relating to the accounts, contracts, debts, and revenues of the corporation."

Section 14 of chapter 8 provides, in part:

"SEC. 14. The council shall cause all the records of the corporation, and of all proceedings of the council, and all books, documents, reports, contracts, receipts, vouchers, and papers relating to the finances and affairs of the city, or to the official acts of any officer of the corporation (unless required by law to be kept elsewhere) to be deposited and kept in the office of the city clerk, and to be so arranged, filed and kept as to be convenient of access and inspection, and all such records, books, and papers shall be subject to inspection by any inhabitants of the city or other person interested therein, at all reasonable

times, except such parts thereof as, in the opinion of the council, it may be necessary for the furtherance of justice to withhold for the time being."

On the 4th of November, 1908, the common council voted to have all of the books of the various departments of the city government audited, and soon afterwards relator, acting as mayor, made a demand for access to the books of the water board, which was refused, and thereupon he made the following written demand upon the board of water commissioners, viz. :

"*Gentlemen:* Owing to the fact that the finance committee of the city council, through press of business, failed to audit your books and compare your last annual report therewith as provided by section 15 of chapter 33 of the city charter, and owing to the unfavorable criticism and comments occasioned thereby, I hereby respectfully demand under section 3 of chapter 7 of the city charter access to and the submission to me of all your waterworks books, records, and papers for examination and inspection thereof by myself and the finance committee."

The demand having been refused the common council adopted a resolution providing, among other things:

" That the finance committee and the mayor be and are hereby directed to make an audit of the books of the Manistee board of water commissioners during office hours, viz., from 8 to 5, in the city offices, and to demand of the said board their books for that purpose, and, if the same is refused, then be it resolved that the mayor is hereby directed to at once commence mandamus proceedings against said board of water commissioners for the production and inspection of its books."

To the mayor's written demand respondent replied on December 28, 1908, in writing, refusing compliance:

" For the reason that you have no lawful right, power or authority to make the same at this time; and this board cannot, therefore, grant your request without itself exceeding its authority and violating the provisions of the charter of this city which expressly provides that said books shall be audited at the close of the fiscal year," etc.

Thereupon relator filed his application for the writ of

mandamus to compel the respondent to afford to the
mayor and finance committee of the council access to its
books, etc., for the purpose of auditing them, and also to
require the board to keep its books in the city clerk's
office, where they might be inspected by the mayor and
finance committee, and also by any member of the coun-
cil or inhabitant of the city. The respondent answered
at great length, denying relator's right to the relief
sought as a matter of law, claiming bad faith on the part
of relator and others, and conspiracy to destroy the effi-
ciency of the board for political purposes, asserting that
it is a co-ordinate branch of the city government, and
that the city government has no control over it whatever,
that the right to examine and audit its books is limited to
the time fixed by section 15 of chapter 33, and that at all
other times it may refuse and prevent any inspection
thereof. Relator demurred to the answer for imperti-
nence, redundancy, etc. The court struck out certain
portions of the answer, treating the demurrer as a motion
to strike out, and heard the case against respondent's ob-
jection that he was entitled to 14 days' notice of hearing
upon the demurrer. After full consideration of the plead-
ings and the briefs of counsel for the respective parties,
the circuit judge granted the writ, filing an elaborate and
well-reasoned opinion fully covering the points made.
Respondent has brought the matter to this court for re-
view upon writ of certiorari, filing a printed brief of 60
pages.

In our opinion the questions of practice argued in the
briefs are unimportant. The real question before the cir-
cuit court and for the consideration of this court is a ques-
tion of law, presented by the pleadings upon undisputed
facts, as to the authority of the common council to order
an inspection and audit of the books at a different time
than that provided for in section 15 of chapter 33, and to
require them to be filed in the office of the city clerk so
as to be convenient of access and inspection. Treating
the demurrer as overruled, and the answer as originally

filed, the question remains a legal question, and, conceding that the bad faith of an application may influence the discretion of the court to deny an application otherwise proper, we are of the opinion that the court's discretion was properly exercised in this matter, and we concur in his legal conclusions. The provisions of the charter which have been quoted clearly indicate that it was not the intention of the legislature to create an independent department of city government entirely outside of the control of the usual city government. On the contrary, it appears from chapter 33 that the board of water commissioners was designed to be an administrative agency of the city corporation, the owner of the property to be administered, and subject to its general supervision and control, except as otherwise provided. The provision in section 15 of chapter 33 that the board should file its report, and that the finance committee should audit it, while it created a duty on the part of the board and the council, did not restrict the exercise of the general powers inherent in the council to investigate the performance of their duties by its officers and agents. An attempt to take from the corporation its powers in this regard with reference to its own property would in my opinion be unconstitutional. It is sufficient in this matter, however, to say that no such attempt appears to have been made. The amendments of 1903 are to be construed as though they were a part of the original charter. *People, ex rel. Attorney General,* v. *Railroad Co.*, 145 Mich. 140. The commissioners are expressly declared to be officers of the city in the amendatory act, and as such officers they are subject to the authority of the common council under the provisions of section 14 of chapter 8 of the charter.

The order of the circuit court is affirmed.

GRANT, MONTGOMERY, OSTRANDER, and MOORE, JJ., concurred.